IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ENDURACARE THERAPY MANAGEMENT, INC., <br><br> Plaintiff, <br><br> vs. <br><br> CORNERSTONE HEALTHCARE OF ILLINOIS, INC. a/k/a WHITE COUNTY MEDICAL CENTER, *et al.*, <br><br> Defendants. | CASE NO. 4:05-cv-04112-JPG |

**MEMORANDUM AND ORDER**

This matter comes before the Court on the motion for partial summary judgment filed by plaintiff EnduraCare Therapy Management, Inc. ("EnduraCare"), seeking judgment on its first three claims against defendant James R. Cheek ("Cheek") (Doc. 24). Cheek has not responded to the motion.

**I.      Summary Judgment Standard**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). The reviewing court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Spath*, 211 F.3d at 396. Where the moving party fails to meet its strict burden of proof, a court cannot enter summary judgment for the moving party even if the opposing party fails to respond

to the motion. *Cooper v. Lane*, 969 F.2d 368, 371 (7th Cir. 1992). A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000). Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson,* 477 U.S. at 252; *accord Michas*, 209 F.3d at 692.

**II.     Facts**

Taken in the light most favorable to Cheek, the evidence and admissions establish the following relevant facts.[1]

Plaintiff EnduraCare is a business that provides physical, occupational and speech therapy services to certain hospital patients and nursing home residents. It also provides ancillary services and products to facilities where it renders the aforementioned services. One such facility is the White County Medical Center ("Medical Center"), which is an unincorporated facility that is not registered with the Illinois Secretary of State or any local governmental entity.

On April 12, 2004, EnduraCare entered into a contract ("the Agreement") with the Medical Center to provide the aforementioned therapy services and certain ancillary products for

---

[1]A substantial portion of the facts in this case are conclusively established by defendant Cheek's failure to respond to requests for admissions propounded under Federal Rule of Civil Procedure 36(a). On September 23, 2005, EnduraCare served Cheek via regular United States mail with "Plaintiff EnduraCare Therapy Management, Inc.'s First Request for Admission of Facts to Defendant James R. Cheek." Cheek did not answer or object to the requests within thirty days after service, so the matters at issue were deemed admitted, *see* Fed. R. Civ. P. 36(a), and conclusively established for the purposes of this case, *see* Fed. R. Civ. P. 36(b).

its patients.  Under the Agreement, EnduraCare would submit monthly invoices to the Medical Center along with documentation to support the invoices, and the Medical Center would be obligated to pay each invoice within sixty days of receiving it.  The Medical Center agreed to pay interest at the rate of 1.5% per month for any late payments and to pay the attorney's fees in the event EnduraCare was required to bring suit to enforce the Agreement.  Defendant Cheek, the administrator of the Medical Center and president and chief executive officer of defendant Cornerstone, signed the Agreement on the Medical Center's behalf.  The Agreement made no mention of Cornerstone or its relationship to the Medical Center.

   EnduraCare began providing services to Medical Center patients on March 1, 2004, and performed all of its obligations according to the terms of the Agreement.  In turn, the Medical Center paid some, but not all, of the amounts it owed to EnduraCare under the Agreement.  To remedy the delinquent payment, the Medical Center agreed to a repayment schedule ("Payment Plan") in order to ensure EnduraCare continued to provide services to the Medical Center. Again, Cheek signed the Payment Plan on behalf of the Medical Center.

   The Medical Center did not pay in accordance with the Payment Plan, which led EnduraCare to stop providing the contracted services on May 2, 2005.  At that point, the Medical Center owed EnduraCare at least $321,933.85.  Cheek failed to timely respond to a request to admit that he was personally responsible for this liability, plus interest, as provided in the Agreement.  The debt remains unpaid.

   EnduraCare filed this suit on June 13, 2005, alleging six claims:  breach of contract for failing to pay according to the Agreement (count 1), breach of contract for failing to pay under the Payment Plan (count 2), account stated (count 3), quantum meruit (count 4), promissory

estoppel (count 5), and breach of the restrictive covenant (count 6).  It seeks to hold Cheek liable as an agent of the Medical Center, which it argues is a non-existent principal or, alternatively, as an agent of defendant Cornerstone, which it alleges owns the Medical Center and is an undisclosed principal.

**III.    Analysis**

    A.    <u>Breaches of Contracts</u>

EnduraCare has established that there is no genuine issue of material fact as to whether the Medical Center breached the Agreement and incurred a liability of $321,933.85, and whether the Medical Center breached the Payment Plan as to some lesser amount.

In order to establish a cause of action for breach of contract under Illinois law, a plaintiff must prove "(1)  the existence of a valid and enforceable contract; (2)  performance by the plaintiff; (3)  breach of contract by the defendant; and (4)  resultant injury to the plaintiff." *Henderson-Smith & Assocs. v. Nahamani Family Serv. Ctr., Inc.*, 752 N.E.2d 33, 43 (Ill. App. Ct. 2001); *accord Catania v. Local 4250/5050 of Commc'n Workers of Am.*, 834 N.E.2d 966, 971 (Ill. App. Ct. 2005).

    1.    <u>Agreement</u>

In this case, there is no genuine issue of material fact about any of these elements with respect to the Agreement.  The Agreement was a product of an offer and acceptance, contains consideration for both parties, and is definite and certain in its terms.  The Court can detect no other plausible reason that it might be invalid or unenforceable, and Cheek admits as much in ¶ 20 of his Answer, so it must find that EnduraCare satisfies the first element of a breach of contract cause of action.  The evidence also establishes that EnduraCare fully performed all its

obligations under the Agreement and that White County did not hold up its end of the bargain; it did not pay the amounts it agreed to pay in the Agreement for the services EnduraCare provided. The Medical Center owed EnduraCare $321,933.85, as reflected by Exhibit 3 to the Complaint, incorporated into the Amended Complaint, plus interest pursuant to § 2 of the Agreement. Finally, EnduraCare was injured by this failure in that it has not been paid the $321,933.85 to which it is entitled. Thus, EnduraCare has established a breach of the Agreement.

    2.    <u>Payment Plan</u>

Similarly, there is no genuine issue of material fact about whether there was a breach of the Payment Plan. Like the Agreement, the Payment Plan is a valid and enforceable contact under which the Medical Center agreed to make scheduled payments and in exchange EnduraCare would refrain from terminating services under the Agreement. The evidence shows that EnduraCare refrained from such termination until the Medical Center failed to make payments required by the Payment Plan and thus EnduraCare performed all its duties under that contract. It appears that the amount due to EnduraCare under the Payment Plan is less than the amount due under the Agreement as of May 2, 2005, the date EnduraCare terminated the Agreement.[2]

    3.    <u>Account Stated</u>

As for EnduraCare's account stated theory, an account stated is "an agreement between parties who have had previous transactions that the account representing those transactions is true and that the balance stated is correct, together with a promise, express or implied, for the

---

[2] The Court notes that, in any case, EnduraCare will not be able to recover more than is due under the Agreement. To allow more would be to award double recovery.

payment of such balance." *W.E. Erickson Constr., Inc. v. Congress-Kenilworth Corp.*, 477 N.E.2d 513, 519 (Ill. App. Ct. 1985). An account stated must manifest the mutual assent of the parties that the accounting rendered is accurate, which often occurs when one party submits a statement to another party and the other party fails to object within a reasonable period of time or otherwise acquiesces to the statement. *Id.* An account stated theory is an alternative theory for proving damages in a breach of contract claim. *Fabrica de Tejidos Imperial, S.A. v. Brandon Apparel Group, Inc.*, 218 F. Supp. 2d 974, 978 (N.D. Ill. 2002).

In this case, EnduraCare points to a May 26, 2005, statement of the Medical Center's account and the balance due as of the termination of the Agreement on May 2, 2005. It has not, however, presented evidence that this statement was given to the Medical Center or to Cheek or that either the Medical Center or Cheek retained the statement without objection for a reasonable period of time or otherwise acquiesced to the statement in a way that manifested their agreement to it. Therefore, the Court cannot grant summary judgment on count 3 of EnduraCare's Amended Complaint. However, should EnduraCare prevail on its claim for breach of the Agreement, the instrument that formed the basis for the transactions between the parties from which the account stated arose, its claim for an account stated will be moot and subject to dismissal. *See Fabrica de Tejidos Imperial*, 218 F. Supp. 2d at 979.

B.  Cheek's Liability

Whether Cheek, as the agent of medical center, is personally liable for the amount due under the Agreement and the Payment Plan is less clear than that those two contracts were breached. The analysis of this issue is complicated somewhat because there is no evidence in the record, other than Cheek's admission in his answer that Cornerstone's principal place of business

is the address listed in the Agreement as the site of the Medical Center's facility and that he served as an officer or administrator of both entities, to establish that Cornerstone is, in fact, connected to the Medical Center, as the owner, operator or anything else.  If the Medical Center is, as EnduraCare alleges, a non-existent or incompetent entity and the true principal of Cheek was Cornerstone, it appears the Cheek could be liable for the contracts he signed on the theory that he was acting as an agent of an undisclosed or partially disclosed principal.  "Generally, an agent who contracts with a third party on behalf of an undisclosed or partially disclosed principal is liable personally on the contract."  *Kutcher v. Barry Realty, Inc.*, 841 N.E.2d 73, 77 (Ill. App. Ct. 2005) (citing *Jameson Realty Group v. Kostiner*, 813 N.E.2d 1124, 1136 (2004));  *Kimco Corp. v. Murdoch, Coll & Lillibridge, Inc.*, 730 N.E.2d 1143, 1146 (Ill. App. Ct. 2000). However, if the Medical Center is, indeed, an entity such as a partnership, joint venture or unincorporated association, it is possible that Cheek was acting on behalf of a disclosed principal, in which case he would not be liable for the contracts.  "When an agent of a disclosed principal executed a document and indicated next to his signature his corporate affiliation [or other agency relation], then, absent evidence of a contrary intent in the document, the agent would not be personally bound."  *Ameritech Publ'g of Ill., Inc. v. Hadyeh*, 839 N.E.2d 625, 632 (Ill. App. Ct. 2005) (citing *Knightsbridge Realty Partners, Ltd.-75 v. Pace*, 427 N.E.2d 815, 819 (Ill. App. Ct. 1981)).

      Furthermore, the Court has questions about the propriety of using requests to admit to establish a defendants' ultimate liability for a debt as opposed to the facts underlying the alleged liability.  Requests to admit are proper to establish facts or the application of law to facts but not to establish legal conclusion.  *See* 7 James W. Moore, *Moore's Federal Practice* § 36.10[8] (3d

ed. 2006);  *see, e.g., Golden Valley Microwave Foods, Inc. v. Weaver Popcorn Co.*, 130 F.R.D. 92, 96 (N.D. Ind. 1990) (request for admission that patent and claim is valid improperly seeks legal conclusion).

The Court believes that further briefing on the two foregoing issues would be helpful to resolution of the motion for summary judgment and, ultimately, this entire case.  Accordingly, the Court **ORDERS** EnduraCare to submit a supplemental memorandum on the two foregoing issues on or before June 9, 2006.  Cheek may respond on or before June 23, 2006, and EnduraCare may reply on or before June 30, 2006.  The supplemental memorandum and response may not exceed ten pages, and the reply, if any, may not exceed five pages.  The parties must link their filings to the original summary judgment motion when electronically filing them.  The Court **RESERVES RULING** on the motion for summary judgment (Doc. 24) pending the review of the supplemental briefing.

**IT IS SO ORDERED.**
**Date: May 22, 2006**                              s/ J. Phil Gilbert
                                                    **United States District Court Judge J. Phil Gilbert**